**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RAYMOND WALL, | |
| *Plaintiff*, | CIVIL ACTION |
| v. | No. 15-04838 |
| CONTINENTAL KRAFT CORPORATION, *et al.*, | |
| *Defendants*. | |

**PAPPERT, J.**                                                           **July 18, 2016**

## MEMORANDUM

Plaintiff Raymond Wall ("Wall") is a Pennsylvania citizen and former employee of Inter-Papier Handelsgesellschaft, M.B.H. ("Inter-Papier"), a German corporation. Wall served as Inter-Papier's sales director in the United States throughout 2014 until his relations with the company began to deteriorate in early 2015. Wall contends that Inter-Papier, among other affiliated corporations (collectively "Defendants"), owe him wages and commissions. The defendants move to dismiss Wall's amended complaint. The motion, based on several grounds including an alternative request to transfer the case to the Southern District of New York, is denied in all respects.

## I.

In 2014 Continental Kraft Corporation ("CKC") and Inter-Papier formed a joint venture named Inter-Papier North America, Inc. ("Inter-Papier NA"). (Pl.'s Am. Compl. ¶¶ 3–5, 9–10, ECF No. 11.) The companies market and sell various paper products domestically and internationally. (*Id.* ¶ 9.) Sometime thereafter David Landau ("Landau"), the President of CKC, and Udo Knappe ("Knappe"), the General Manager of Inter-Papier, "negotiated a compensation

1

agreement" with Wall "within the territorial jurisdiction" of this Court for Wall's "services in

North America." (*Id.* ¶ 11; Wall Aff. ¶ 16, ECF No. 19-1.) Before the agreement was finalized,

Wall was already "marketing and selling Defendants' products" and receiving payment for his

work from Defendants. (Pl.'s Am. Compl. ¶ 12.) During the contract negotiations, both Landau

and Knappe were aware that Wall's home office was located in Holland, Pennsylvania, and

"repeatedly" contacted him there. (*Id.* ¶¶ 2, 13–14; Wall Aff. ¶¶ 12, 15, 18–20, 49, 51–54.)

On August 8, 2014 Landau e-mailed Wall the "agreement." Knappe was copied on the e-

mail. (Pl.'s Am. Compl. ¶¶ 18–19; Pl.'s Am. Compl., Ex. A.) The agreement outlined the

financial terms between the parties and, among other things, granted Wall an advance of $90,000

per year (or $7,500 per month), to be applied against his commissions. (Pl.'s Am. Compl., Ex.

A.) The ultimate terms of the agreement were finalized in Holland, Pennsylvania. (Wall Aff. ¶

22.)

Wall "marketed, negotiated, and secured sales" of Defendants' products from his home

office in Holland. (Pl.'s Am. Compl. ¶¶ 20–21.) He also solicited several Pennsylvania-based

companies. (*Id.* ¶ 22; Wall Aff. ¶¶ 36–37.) As a result of Wall's interactions with potential

clients, Defendants shipped their products to customers in Pennsylvania and throughout the

United States. (Pl.'s Am. Compl. ¶¶ 25–26; Pl.'s Am. Compl., Ex. B; Wall Aff. ¶¶ 30, 38–39.)

Defendants introduced Wall "as an employee of Inter-Papier to their customers" and "invited

[him] to attend professional seminars with [their] other employees." (Pl.'s Am. Compl. ¶¶ 27–

28; Wall Aff. ¶ 40.) Knappe told Inter-Papier to produce a business card for Wall, which listed

his title as "Sales Director" and his address as "Holland, Pennsylvania." (Pl.'s Am. Compl. ¶ 15;

Wall Aff. ¶¶ 43–44.) Defendants also "routinely sent samples of their products" to Wall's office

in Holland, Pennsylvania. (Pl.'s Am. Compl. ¶ 17; Wall Aff. ¶¶ 31–34.)

2

From July through December 2014 Defendants paid Wall "the monthly draw [$7,500], as well as travel costs and expenses." (Pl.'s Am. Compl. ¶¶ 29–31.) At the end of 2014, Defendants informed Wall that "CKC ceased to exist" and tried to "renegotiate the terms of their relationship" with Wall. (*Id.* ¶ 32.) Sometime thereafter, Landau and Knappe informed Wall that a successor entity to CKC, DPL Trading, LLC ("DPL") was formed and that DPL "would undertake CKC's obligations with respect to the parties' agreement." (*Id.* ¶¶ 6, 33–34.) DPL made three payments to Wall in January and February of 2015. (*Id.* ¶¶ 35–37.) These payments were similar to the ones that CKC made previously. (*Id.* ¶ 35.) Sometime after February the parties' attempts to renegotiate their agreement broke down. (*Id.* ¶ 38.)

Wall filed his amended complaint on November 2, 2015 against CKC, Inter-Papier, Inter-Papier NA and DPL. (ECF No. 11.) The complaint alleges that Defendants breached their agreement with him, violated Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. Section 260.1, *et seq.*, and in the alternative were unjustly enriched by Wall's services. (Pl.'s Am. Compl. ¶¶ 48–66.) Wall also requests an accounting of the "proceeds, earnings [and] profits received . . . by Defendants in violation of [his] statutory and common law rights." (*Id.* ¶¶ 67–72.) He seeks relief in the form of actual, liquidated and statutory damages for his lost wages, as well as interest, penalties and attorneys' fees and costs. (*Id.* at 11–12.)

Defendants filed a motion to dismiss on November 11, 2015 contending that: (1) the Court lacks personal jurisdiction; (2) the Court should dismiss the complaint under the doctrine of *forum non conveniens* or alternatively; (3) the matter should be transferred to the Southern District of New York; and (4) the WPCL count fails to state a claim upon which relief can be granted.[1] (Defs.' Mot. at 8, ECF No. 12.) Wall filed a response, sur-reply and second sur-reply

---

[1] Defendants also contended that they were not properly served, (Defs.' Mot. at 8, ECF No. 12), but abandoned that position at oral argument. (Oral Arg. 14:23–15:2, ECF No. 31.)

and Defendants filed a reply.  (ECF Nos. 19–20, 23, 34.)  The Court heard oral argument on

Defendants' motion on June 1, 2016.  (ECF No. 31.)

## II.

### A.

In reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of

Civil Procedure 12(b)(2), the Court "must accept all of the plaintiff's allegations as true and

construe disputed facts in favor of the plaintiff."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361,

368 (3d Cir. 2002) (citation omitted).  A motion made pursuant to Rule 12(b)(2) "is inherently a

matter which requires resolution of factual issues outside the pleadings," *i.e.*, "whether *in*

*personam* jurisdiction actually lies."  *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d

61, 66 n.9 (3d Cir. 1984).  Once the defense has been raised, "then the plaintiff must satisfy its

burden of proof in establishing jurisdictional facts through sworn affidavits or other competent

evidence" and may not "rely on the bare pleadings alone."  *Id.* (citing *Int'l Ass'n of Machinists &*

*Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700 (3d Cir. 1982)).  The plaintiff must

instead offer evidence that establishes with reasonable particularity the existence of sufficient

contacts between the defendant and the forum state to support jurisdiction.  *See Carteret Sav.*

*Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *see also Provident Nat. Bank v. Cal. Fed.*

*Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).

### B.

Under Federal Rule of Civil Procedure 4(k), a district court typically exercises personal

jurisdiction according to the law of the state where it sits.  *See O'Connor v. Sandy Lane Hotel*

*Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).  Pennsylvania's long-arm statute permits a court to

exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United

States and . . . based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). To exercise personal jurisdiction over Defendants, the Court must determine whether under the Due Process Clause they have "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316–17 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two type of personal jurisdiction: general and specific. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984)). General jurisdiction is proper when a defendant's contacts with the forum state are "continuous and systematic," whether or not those contacts are related to the plaintiff's cause of action. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Specific jurisdiction exists when the "non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz*, 270 F.3d 144, 150 (3d Cir. 2001) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Wall argues that the Court has specific jurisdiction over Defendants. (Pl.'s Resp. at 2–8, ECF No. 19.)

The specific jurisdiction inquiry has three parts. *See O'Connor*, 496 F.3d at 317. First, the plaintiff must show that the defendant "purposefully directed [its] activities at the forum." *Burger King*, 471 U.S. at 472; *see also Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros*, 466 U.S. at 414; *see also Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). Third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

**i.**

As an initial matter, Defendants must have "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). However, "[p]hysical entrance is not required." *O'Connor*, 496 F.3d at 317 (citing *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendants into the forum may count toward the minimum contacts that support jurisdiction.")).

Many of Defendants' "claim-specific" contacts with Pennsylvania constitute purposeful contacts. *Id.* at 318. Specifically, Wall's affidavit states that "Defendants shipped their products through Pennsylvania and . . . the jurisdictional territory of the Eastern District of Pennsylvania." (Wall Aff. ¶ 39.) For example, "in December of 2014, Defendants shipped an order of their products for Nupak Printing, LLC of Red Lion, Pennsylvania, to Chester, Pennsylvania." (*Id.*) Samples of Defendants' products were also "shipped to Holland, Pennsylvania" per "specific instructions and directions of Landau and Knappe." (*Id.* ¶¶ 31–32.) Through these acts, Defendants deliberately reached into Pennsylvania to target its citizens. *See O'Connor*, 496 F.3d at 3418; *see also Hanson*, 357 U.S. at 253; *Grand Entm't Group*, 988 F.2d at 482. Taken as true, Wall's allegations establish that Defendants purposefully availed themselves of the Commonwealth.

**ii.**

Wall's claims must also "arise out of or relate to" at least one of those contacts. *Helicopteros*, 466 U.S. at 414. The Supreme Court of the United States has "not yet explained the scope of this requirement" and "[s]tate and lower federal courts have stepped in to fill the void, but their decisions lack any consensus." *O'Connor*, 496 F.3d at 318 (citations omitted). In

6

contract cases, the Third Circuit Court of Appeals has "effectively required substantive relevance." *Id.* at 320; *see also Gen. Elec.*, 270 F.3d at 150 ("In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."). In the course of this necessarily fact-sensitive inquiry, "the analysis should hew closely to the reciprocal principle upon which specific jurisdiction rests." *Id.* at 323 (citing *Burger King*, 471 U.S. at 475–76). That is, specific jurisdiction is the cost of enjoying the benefits of the forum. *See id.*

Defendants contracted with Wall to market and sell their products throughout the United States, and specifically in Pennsylvania. (Pl.'s Am. Compl. ¶¶ 20–22; Wall Aff. ¶¶ 36–37.) In return for Wall's services, the contract required Defendants to compensate him. (Pl.'s Am. Compl., Ex. A.) Neither party disputes that there was a contract, that Wall performed his contractual obligations and that Defendants owe him some amount of money. (*See generally* Defs.' Mot.; Pl.'s Resp.) Defendants' contacts with Pennsylvania—the sending of products and samples to customers in the Commonwealth—give rise to Wall's breach of contract claim. (Wall Aff. ¶¶ 31–32, 39.) "It is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the [plaintiff's] claims." *O'Connor*, 496 F.3d at 324. Wall's claims therefore "arise out of or relate to" Defendants' contacts with Pennsylvania.

### iii.

Finally, the Court considers whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. The existence of minimum contacts makes jurisdiction presumptively constitutional. Defendants must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Pennzoil Prods. Co. v. Colelli*

7

& *Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998) (noting that it is "rare" for fair play and substantial justice to defeat minimum contacts).  The factors that a court must consider are "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies,'" *O'Connor*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S. at 477), and "'[t]he procedural and substantive interests of other nations.'"  *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987)).

This is not a "rare" and "compelling" case where exercising jurisdiction would be unreasonable despite the presence of minimum contacts.  *O'Connor*, 496 F.3d at 325.  Defendants' minimum contacts with the Commonwealth outweigh any burden Inter-Papier witnesses may endure in traveling from Germany to Pennsylvania.  When minimum contacts are present, "often the interests of the plaintiff and the forum will justify even the serious burdens placed on the alien defendant."  *Asahi*, 480 U.S. at 114.

Pennsylvania also has an interest in adjudicating the dispute as, according to Wall's allegations, the contract was negotiated, signed and performed in the Commonwealth.  (Pl.'s Am. Compl.   ¶¶ 20–21; Wall Aff. ¶ 22.)  The Commonwealth has a "manifest interest in providing effective means of redress" when a foreign corporation reaches into the state and solicits its citizens.  *O'Connor*, 496 F.3d at 325 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  In light of these factors, exercising jurisdiction over Defendants "comport[s] with fair play and substantial justice."  *Burger King*, 471 U.S. at 476.

### III.

Under the doctrine of *forum non conveniens*, a district court may exercise its discretion to dismiss a case where an alternative forum has jurisdiction to hear the case and when trial in the plaintiff's chosen forum "would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience," or "when the chosen forum is inappropriate due to the court's own administrative and legal problems." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010) (citing *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008)).

Courts analyze these requirements by first determining whether an adequate alternate forum exists. *Id.* at 160 (citing *Windt*, 529 F.3d at 189–90). If an adequate alternate forum exists, the district court must then determine the "amount of deference" to give the "plaintiff's choice of forum." *Id.* (citing *Windt*, 529 F.3d at 190). Finally, the district court must balance the relevant private and public interest factors. *Id.* "'If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on *forum non conveniens* grounds.'" *Id.* (quoting *Windt*, 529 F.3d at 190).

The defendant bears the burden to show that *forum non conveniens* dismissal is warranted. *See Bhatnagar v. Surrendra Overseas, Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995) (citation omitted). The defendant must show that the balance of private and public factors "'tips decidedly in favor of trial in the foreign forum.'" *Windt*, 529 F.3d at 192 (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991)). "'If, when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied.'" *Id.* (quoting *Lacey*, 932 F.2d at 180).

**A.**

In determining whether the alternative forum is adequate, the Court considers two factors: (1) whether the defendant is amenable to process there; and (2) whether the other forum's legal or procedural requirements would prevent the plaintiff from litigating his claims. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).  Defendants are amenable to process in Germany.  (Defs.' Mot. at 22–23.)  Neither party however has submitted adequate briefing for the Court to determine whether Germany's legal or procedural requirements would prevent Wall from litigating his claims there.  (*See generally* Defs.' Mot; Pl.'s Resp.)  Regardless, the Court finds that the matter should not be dismissed on *forum non conveniens* grounds given the deference to Wall's chosen forum and the private and public interest factors that weigh against dismissal.

**B.**

A plaintiff's choice of forum is accorded great deference.  *See Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989) (citing *Piper Aircraft*, 454 U.S. at 255).  "The focus of the deference inquiry . . . is on convenience, not on the particular significance of a party's residence or citizenship or a party's ability to invoke a United States court's jurisdiction." *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 875 (3d Cir. 2013).  Therefore, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*."  *Id.* at 876.  Wall's amended complaint alleges that his contract with Defendants was negotiated, signed and performed in Pennsylvania.  (Pl.'s Am. Compl. ¶¶ 20–21;

Wall Aff. ¶ 22.)  These allegations are sufficient to support an inference that his choice of forum was based on convenience and that his lawsuit has a bona fide connection to this jurisdiction.

**C.**

Given that the Court must defer to Wall's choice of forum, the Court addresses whether Defendants have shown that "the private and public interest factors weigh heavily on the side of dismissal."  *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) (citations omitted).  The private interest factors to evaluate are: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *See Windt*, 529 F.3d at 189 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

Wall argues that a substantial portion of the documents necessary to establish his case are located in Pennsylvania, (Pl.'s Resp. at 17), while Defendants contend that the documents necessary to support their defense are located in Germany.  (Defs.' Mot. at 24.)  Wall also contends that many of his witnesses are unable or unwilling to travel to Germany, (Pl.'s Resp. at 17–18), while Defendants argue that the majority of their witnesses reside in Germany and are unable or unwilling to travel to Pennsylvania.  (Defs.' Mot. at 24–25.)  At this stage in the litigation the Court cannot determine the location of the most significant documents and witnesses.  Since the Court must interpret all facts in the light most favorable to Wall and should not disturb Wall's choice of forum unless it is overwhelmingly outweighed by "oppressiveness and vexation" to Defendants, the private interest factors weigh in favor of Wall.  *Windt*, 529 F.3d at 192 (citing *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

**D.**

The public interest factors are: (1) administrative difficulties flowing from court congestion; (2) the "'local interest in having localized controversies decided at home;'" (3) the interest in "'having the trial of a diversity case in a forum that is at home with the state law that must govern the case;'" (4) the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Windt*, 529 F.3d at 189 (quoting *Gulf Oil*, 330 U.S. at 508–09).

The first factor does not weigh in favor of dismissal. Without addressing whether the docket of the Eastern District of Pennsylvania is more congested than that of German courts, this case can be adjudicated here without undue administrative difficulties. The second factor also does not weigh in favor of dismissal. Given that Wall is a Pennsylvania citizen and performed the contract that gives rise to the suit in Pennsylvania, (Pl.'s Am. Compl. ¶¶ 20–21; Wall Aff. ¶ 22), there is a strong local interest in deciding the case in the Commonwealth.

The third and fourth factors depend on whether Pennsylvania or German law governs the contract. Wall argues that Pennsylvania law applies to his claims, (Pl.'s Resp. at 16), while Defendants argue German law governs. (Defs.' Mot. at 26.) Interpreting the facts in the light most favorable to Wall, Pennsylvania law governs any dispute over the contract because it was negotiated and performed in the Commonwealth. *See Kramer v. Nowak* , 908 F. Supp. 1281, 1285 (E.D. Pa. 1995) (citing *In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 881–82 (3d Cir. 1984)). Moreover, Defendants have failed to meet their burden under Federal Rule of Civil Procedure 44.1, which requires a party to describe the foreign law it seeks the Court to apply. Therefore, the law of the forum—Pennsylvania—applies.

In diversity actions, courts look to the choice of law rules of the forum state to determine which state's substantive law governs.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Those rules first require courts to focus on whether there is a "true conflict between the relevant laws" of Pennsylvania and Germany.  *Specialty Surfaces Int'l v. Cont'l Cas. Co.*, 609 F.3d 223, 239 (3d Cir. 2010) (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 93d Cir. 2007)).  A true conflict exists and a more thorough choice of law analysis is necessary "only if *both* jurisdictions' interests would be impaired by the application of the other's laws." *Hammersmith*, 480 F.3d at 230 (citations and internal quotation marks omitted).  When a true conflict occurs, the court applies the "law of the state having the most significant contacts or relationships with the particular issue."  *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005) (citation omitted).

Federal Rule of Civil Procedure 41.1 provides that: "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.  In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination must be treated as a ruling on a question of law."  While the rule gives district courts the authority to determine foreign law, it does not require district courts to evaluate foreign law *sua sponte*.  *See Bel-Ray Co., Inc. v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999).  Rather, it is the responsibility of the party seeking application of foreign law to "carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case."  *Id.* at 440 (citation omitted).  Defendants did not brief this issue and therefore fail to meet their burden to show the application of German law.

The fifth factor, unfairness of burdening citizens in an unrelated forum with jury duty, weighs against dismissal.  If either party were to appeal the arbitration result, the Court would review the decision *de novo*.  Therefore, a jury may have to hear the dispute.  A Pennsylvania jury is appropriate because Wall is a citizen of the Commonwealth and performed the contract that gives rise to the suit in the state.  (Pl.'s Am. Compl. ¶¶ 20–21; Wall Aff. ¶ 22.)

### IV.

Defendants argue that if the Court declines to dismiss Wall's complaint under *forum non conveniens*, the case should be transferred to the Southern District of New York because that is a "more convenient forum."  (Defs.' Mot. at 30–32.)  Under 28 U.S.C. Section 1404(a), district courts may "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The purpose of Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.—585*, 364 U.S. 19, 26 (1960)).  District courts are vested with "broad discretion" to determine whether transfer is appropriate.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  Transfers are "not to be liberally granted."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citation omitted).

In deciding a motion to transfer, the Court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  *Jumara*, 487 U.S. at 879 (citation and internal quotation marks omitted).  First, the Court determines "whether venue would be

proper in the transferee district." *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001). If so, the Court then "determine[s] whether a transfer would be in the interests of justice." *Id.* The moving party bears the burden of persuasion. *See Shutte*, 431 F.2d at 25.

The Southern District of New York is a proper venue. CKC, Inter-Papier NA and DPL are incorporated and have their principal place of business in New York. (Pl.'s Am. Compl. ¶¶ 3, 5–6; Defs.' Mot. at 31.) Inter-Papier is incorporated in Germany and has a principal place of business in New York. (Pl.'s Am. Compl. ¶ 4; Defs.' Mot. at 31.) Defendants consent to venue in the Southern District of New York and Wall does not contest that it is a proper venue. (Defs.' Mot. at 31; Pl.'s Resp. at 23.) Wall does however argue that the interests of justice weigh against transfer.

In evaluating the propriety of a venue transfer, "courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to 'consider all relevant factors.'" *Jumara*, 55 F.3d at 879 (quoting 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3847 (4th ed. 2013)). The Third Circuit considers both private and public interests when deciding whether transfer is appropriate. *See id.* The private interests to assess are: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent they would be unavailable in a particular forum; and (6) the location of evidence to the extent it cannot be produced in a particular forum. *See id.* The public interests to consider are: (1) the enforceability of the judgment; (2) practical considerations that would make trial easy, expeditious, or inexpensive; (3) the congestion of the court's docket; (4) the local forum's

interest in deciding the case; and (5) the trial judge's familiarity with any applicable state law. *Id.* All of these factors must be assessed to "determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* (citation and internal quotation marks omitted).

## A.

The Court first examines Wall's choice and Defendants' preference of forum. *See Jumara*, 55 F.3d at 879. Great deference is "accorded a plaintiff's choice of forum." *Lony*, 886 F.2d at 633 (citing *Piper Aircraft*, 454 U.S. at 255). Wall's choice of forum is the Eastern District of Pennsylvania as this is where he brought the suit. (Pl.'s Resp. at 23–25.) Defendants' choice of forum, on the other hand, is the Southern District of New York. (Defs.' Mot. at 30–32.) The Court next looks to where the claim arose. *See Jumara*, 55 F.3d at 879. Wall's claims, which center on Defendants' alleged breach of contract, arose in the Eastern District of Pennsylvania according to the allegations in Wall's amended complaint. (Pl.'s Am. Compl. ¶¶ 20–21; Wall Aff. ¶ 22.)

The fourth factor to consider is the convenience of the parties. *See Jumara*, 55 F.3d at 879. A transfer of venue to the Southern District of New York would be less convenient and more burdensome on Wall than retaining the case in the Eastern District of Pennsylvania would be on Defendants, which are four multinational corporations. Inter-Papier will have to travel overseas from Germany regardless of whether the venue is the Eastern District of Pennsylvania or the Southern District of New York.

The final two factors for the Court to consider are the availability of witnesses and evidence, but only to the extent they will not be available in either forum. *See Jumara*, 55 F.3d at 879. Inter-Papier will have to transport any witnesses and evidence overseas whether the case

is heard in New York or Pennsylvania. Wall and the three New York-based Defendants should be able to make their witnesses and evidence available in either forum, although it may be more difficult for Wall's witnesses to travel to the Southern District of New York than for Defendants' witnesses to travel to Philadelphia instead of New York City. The private interests weigh against transfer to the Southern District of New York.

## B.

The first public interest factor is the enforceability of the judgment. *See Jumara*, 55 F.3d at 879. A judgment in the Eastern District of Pennsylvania is just as enforceable as a judgment in the Southern District of New York. Indeed, "there is little significant difference in enforcing a judgment in one federal forum than in another." *E'Cal Corp. v. Office Max, Inc.*, No. 01-cv-3281, 2001 WL 1167534, at *4 (E.D. Pa. Sept. 7, 2001) (citation omitted). The second factor, practical considerations for trial, is neutral. While moving the case to the Southern District of New York may be more advantageous for the three New York-based Defendants, it would be disproportionately less advantageous for Wall, given the expenses that he would personally incur in making witnesses and evidence available. The third factor, congestion of the court's docket, weighs against transfer. *See Jumara*, 55 F.3d at 879. During a twelve month period from June 30, 2014 to June 30, 2015, the Southern District of New York had more total filings (13,031 to 10,596), more pending cases (18,069 to 8,592) and more pending cases per judge (645 to 391) than the Eastern District of Pennsylvania. (Pl.'s Resp., Ex. F.) Fourth, the Eastern District of Pennsylvania has a greater interest in deciding the case than the Southern District of New York given that Wall's claims arose from a contract that was negotiated, signed and performed in Pennsylvania. (Pl.'s Am. Compl. ¶¶ 20–21; Wall Aff. ¶ 22.) The final factor is the trial judge's familiarity with any applicable state law. *See Jumara*, 55 F.3d at 879. Since the case requires a

judge to interpret Pennsylvania contract law and the Commonwealth's Wage Payment and Collection Law, this Court is better suited to interpret Pennsylvania law than a judge in the Southern District of New York.

Since both private and public interest factors weigh against transfer, the Eastern District of Pennsylvania is where "the litigation would more conveniently proceed and the interests of justice . . . better served." *Jumara*, 55 F.3d at 879.

## V.

### A.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in the light most favorable to the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted). A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Under *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. *See Connelly*, 809 F.3d at 787. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, it should

identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### B.

Pennsylvania enacted the Wage Payment and Collection Law ("WPCL") to "provide a vehicle for employees to enforce payment of their wages and compensation held by their employers."  *Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 574 (Pa. Super. Ct. 2006) (quoting *Hartman v. Baker*, 766 A.2d 347, 352 (Pa. Super. Ct. 2000)).  As the Superior Court of Pennsylvania explained:

> The underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages.  The WPCL does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of the agreement.

*Hartman*, 766 A.2d at 352.

Under Section 260.5(a) of the WPCL, "[w]henever an employer separates an employe[e] from the payroll, or whenever an employe[e] quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable."  43 Pa. Cons. Stat. § 260.5(a).  The statute defines "wages" as "all earnings of an employe[e]," 43 Pa. Cons. Stat. § 260.2a, and limits the right of action under the statute to "[t]he secretary or any employe[e], group of employe[e]s, labor organization or party to whom any type of wages is payable." 43 Pa. Cons. Stat. § 260.11a(a).  Therefore, in order for Wall to sue under the WPCL, he must

have been Defendants' employee.  Defendants argue that Wall was not an employee, but rather an independent contractor and that the WPCL accordingly does not apply.  (Defs.' Mot. at 19.)

The WPCL does not define "employee."  Pennsylvania courts have looked to two other statutes, the Unemployment Compensation Act, 43 Pa. Cons. Stat. § 751, *et seq.*, and the Workers' Compensation Act, 77 Pa. Cons. Stat. § 1, *et seq.*, to define employee within the meaning of the WPCL.  *See Morin v. Brassington*, 871 A.2d 844, 849 (Pa. Super. Ct. 2005) (citing *Frank Burns, Inc. v. Interdigital Commc'ns Corp.*, 704 A.2d 678, 680 (Pa. Super. Ct. 1997)).  As an "independent contractor" is not an "employee" within the meaning of the Worker's Compensation Act, independent contractors likewise cannot be employees under the WPCL.  *See id.* at 850.

Pennsylvania courts have "used a multi-factor test to determine whether an individual is an employee or an independent contractor under the WPCL."  *Myers v. Jani-King of Phila., Inc.*, No. 09-cv-1738, 2015 WL 1055700, at *11 (E.D. Pa. Mar. 11, 2015) (citing *Morin*, 871 A.2d at 849–50).  While the factors are "not controlling," they serve as "general guidance to the Court."  *Morin*, 871 A.2d at 850.  The factors include: (1) the employer's control over the manner in which the work is done; (2) responsibility for the results; (3) terms of the agreement between the parties; (4) the nature of the work or occupation; (5) the skill required for performance; (6) whether the employee is engaged in a distinct occupation or business; (7) which party supplies the tools; (8) whether payment is by the time or by the job; (9) whether the work is part of the regular business of the employer; and (10) the right to terminate the employment at any time.  *See id*; *see also Walker v. Washbasket Wash & Dry*, No. 99-cv-4878, 2001 WL 770804, at *10–11 (E.D. Pa. July 5, 2001).  "Paramount for our consideration among these factors is the right of an individual to control the manner that another's work is to be accomplished."  *Id.*

Wall contends that "Defendants supervised his work and retained the ultimate authority to reject any purchase orders that [he] generated." (Pl.'s Resp. at 20.) Moreover, Defendants set the prices that Wall used in selling their products. (*Id.* at 21.) Wall was also not allowed to work with distributors other than Defendants. (*Id.*; Wall Aff. ¶¶ 24–26, 31–34.) *See Accurso v. Intra-Red Servs., Inc.*, 119 F. Supp. 3d 316, 329 (E.D. Pa. 2015) (noting the fact that plaintiff was not allowed to work elsewhere supports the conclusion that he was an employee); *see also Dep't of Labor & Indus. v. W.C.A.B. (Shyra)*, No. 2334-cd-2014, 2015 WL 5511499, at *6 (Pa. Commw. Ct. Aug. 26, 2015) (considering the fact that plaintiff worked only for the defendant in its determination that he was an employee).

Defendants also supplied important tools with which Wall carried out his work: sample products, business cards identifying Wall as an employee of Inter-Papier,[2] an Inter-Papier email address and access to Inter-Papier's internal computer services. (Pl.'s Am. Compl. ¶¶ 15–17.) Defendants also paid Wall's "travel costs and expenses." (*Id.* ¶ 29.) Despite the fact that Wall's payments were partly based on commission, the Pennsylvania Superior Court has held that:

> A traveling salesman, who is hired or engaged to go about showing samples, and taking orders for goods which he transmits to his firm, who pass upon the credit of the purchasers and ship or refuse to ship the goods in accordance with their decision and who receive the purchase money when and as paid, is generally regarded as an employee, and it is immaterial, in this respect, *whether he is paid a salary or by commission*, whether he is furnished transportation by his employer or pays his own expenses, and whether control over the performance of his services is actually exercised, if it has the right to do so for in such case, he is not free from control or direction.

*J.G. Leinbach Co. v. Unemployment Comp. Bd. of Review*, 22 A.2d 57, 59 (Pa. Super. Ct.

---

[2] Defendants cite *Michelson v. Exxon Research & Eng'g Co.*, 588 F. Supp. 92 (W.D. Pa. 1984), to support their contention that Wall's business cards should not weigh in the determination of his employment status. (Defs.' Mot. at 29.) However, in *Michelson*, the employer merely offered to create business cards for the worker. *See Michelson*, 588 F. Supp. at 95. Here, Defendants sent Wall business cards identifying him as an employee of Inter-Papier. (Pl.'s Am. Compl. ¶ 15.)

1941) (emphasis added) (citations omitted).  Wall has pleaded enough facts to establish, at this stage of the litigation, that he was an "employee" of Defendants under the WPCL.

An appropriate Order follows.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.